UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOM BROWER and MARIAH
GODFREY

Plaintiff,

v.                                             Case No. 24-cv-10702

,                            U.S. DISTRICT COURT JUDGE
ERICA ROOSE                         GERSHWIN A. DRAIN
and
EDWARD ROSE ASSOCIATES, INC.
doing business as
Charter Oaks Apartments,

Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [ECF No. 6]

### I.    Introduction

Plaintiffs Malcom Brower ("Brower") and Mariah Godfrey ("Godfrey) filed

the instant action in state court. It was timely removed to this Court on March 19,

2024, and the complaint was amended on March 22, 2024. The amended complaint

names Erica Roose and Edward Rose Associates, Inc., doing business as Charter

Oaks Apartments ("Charter Oaks") as Defendants. *See* ECF No. 5. Plaintiffs bring

eight claims. Counts 1, 3, and 5 allege claims for "refusal of reasonable

accommodation" under the Fair Housing Amendments Act (the "FHA"), 42 U.S.C.

§ 3601 *et seq*. ECF No. 5, PageID.82-95. Counts 2, 4, and 6 allege claims for "refusal of reasonable accommodation" under the Michigan Persons With Disabilities Civil Rights Act (the "PWDCRA"), M.C.L. §§ 37.1501-37.1507. *Id*. Count 7 and 8 allege respective claims for retaliatory eviction under the FHA, 42 U.S.C. § 3618, and the PWDCRA, M.C.L. § 37.1602(f). *Id*.

Before the Court is Plaintiffs' Motion for Preliminary Injunction, filed on March 25, 2024. Defendants responded on April 9, 2024, and Plaintiffs replied on April 16, 2024. The Court held oral argument on April 19, 2024. The Motion is fully briefed.

For the reasons set forth below, Plaintiffs' Motion is denied.

## II.    Factual Background

Edward Rose Associates, Inc. ("Edward Rose") operates the Charter Oaks Apartments, a multifamily housing community in Davison, Michigan with 773 Units. Plaintiff Godfrey moved into Charter Oaks in 2017. Defendants allege that she listed a dog named Ted as a pet on her lease. ECF No. 12, PageID.264. However, Plaintiffs say that Godfrey listed a cat named "Jaspurr" on her lease at the time she moved in. ECF No. 6, PageID.106. Allegedly, Godfrey satisfied all of Charter Oaks' requirements and paid certain fees for the pet to live in her apartment. *Id*.

In 2019, Plaintiff Brower joined Godfrey's lease and they moved into a shared two-bedroom apartment in Charter Oaks. Shortly thereafter, Godfrey submitted a request for Charter Oaks to reclassify the pet she had previously listed on her lease to an Emotional Support Animal (an "ESA"). In support of this request, Godfrey submitted a letter from her healthcare provider that discussed her "disability[.]" ECF No. 12-6, PageID.315. In the letter, Godfrey's provider also stated that, "[t]o help aid in mitigating these challenges and improving the day to day functionality, I have prescribed [Godfrey] the ability to use her pet as an emotional support animal." *Id*. He considered the "presence and companionship" of the animal "to be necessary for [Godfrey] because it [would] help to mitigate the symptoms [she was] experiencing." *Id*. Edward Rose approved the request. *See* ECF No. 12-7.

Plaintiffs also added a cat, Jasper, as a pet on their lease in 2019. *See* ECF No. 12-8. Fast forward to December 2020, Edward Rose issued a "notice of lease violation" to Plaintiffs for an unauthorized pet in their apartment because, as Defendants allege, Plaintiff had an unauthorized cat named Ivory in their apartment. *See* ECF No. 12-8.  In January 2021, however, Godfrey requested that Ivory the Cat be classified as an ESA as well, and Edward Rose approved the request. *See* ECF No. 12-10 and 12-11. So, at this time in 2021, Plaintiffs had Jasper the Cat listed on their lease and Godfrey had two ESAs, Ivory the Cat, and Ted the Dog.

The story's timeline accelerates to February 2023. Plaintiffs renewed their lease, as they had done in years prior since they moved in together in 2019. The new lease term began on April 25, 2023, and is set to conclude on April 22, 2024. ECF No. 12-12, PageID.328. The Lease Agreement also states as follows:

> This lease will begin on the Beginning Date and will continue until the Ending Date (the 'Term'), subject to the rights of the parties to terminate the Lease as set forth herein. If Resident or Owner does not desire to renew this Lease, either Resident or Owner may notify the other party in writing of its intent to terminate this Lease (a 'Termination Notice') at least sixty (60) days prior to the Ending Date (the 'Termination Notice Deadline').

*Id*. at PageID.329. This section of the Lease Agreement is relevant because, as explained *infra*, Defendants declined to renew the lease for an additional term and sent a termination notice to Plaintiffs, so their lease will not renew after it expires on April 22, 2024.

Brower filed an affidavit declaring that, in January 2023, he "asked the office manager of Charter Oaks Apartments, Erica Roose, about getting [a dog for] an ESA." ECF No. 6-7, PageID.160. He says Ms. Roose informed him that he needed to get certain health records for the dog. As alleged, Brower completed these tasks and presented the dog's health information to Ms. Roose in March 2023. She then allegedly told Brower that Charter Oaks had a two-animal limit per apartment. *Id*. As it turns out, five days prior to this alleged conversation, Edward Rose revised its

policy and limited each unit to two animals. *See* ECF No. 12-13. The change applied to all affiliated communities.[1]

 "Based on this policy[,]" Brower says, "the leasing office staff refused to let me even submit my request for reasonable accommodation." ECF No. 6-7, PageID.161. And "[o]ne leasing agent (identity unknown) told Plaintiff Brower that because Ms. Godfrey already has two ESAs, he can 'just use one of hers.'" ECF No. 5, PageID.77. Plaintiffs believe that these facts establish the "first" alleged "refusal of a reasonable request for an accommodation." *Id.*, at PageID.76.

According to Plaintiffs, the second alleged "refusal of a reasonable request for an accommodation" occurred when, on April 7, 2023, he sent a letter to Roose requesting that Charter Oaks provide a reasonable accommodation for his ESA and claiming violations under the FHA. *Id.* Defense counsel sent a response letter, noting that Charter Oaks had not received Brower's request, but that he could resubmit his request and Charter Oaks would evaluate it. ECF No. 6, PageID.109. "Because of the amount of time that had passed," Plaintiffs say, "the dog that Plaintiff Brower had intended to obtain as an ESA was no longer available." *Id.*

---

[1] Defendants allege that, "given that the change became effective after Plaintiffs signed their lease, Edward Rose permitted Plaintiffs to reside in the unit with their animals for the existing lease term." ECF No. 12, PageID.265.

In September 2023, Plaintiffs contacted Charter Oaks about a request to reclassify Jasper the Cat as an ESA for Brower. In support of this request, he submitted a letter from his healthcare provider. The letter stated that Brower "had his health evaluated including his mental health . . . it is felt that patient would and does benefit from an emotional support animal . . . Patient has a history of anxiety and the presence of an emotional support animal will mitigate his symptoms." ECF No. 12-14, PageID.351. Charter Oaks denied his request on October 4, 2023, stating, *inter alia*, that "[y]our request for an Assistance Animal has been denied for the following reason: the number of animals has exceeded the two animals per apartment limit." ECF No. 12-15, PageID.353. Plaintiffs refer to these facts as "the third refusal of a reasonable request for an accommodation." ECF No. 5, PageID.79. On October 13, 2023, Plaintiffs' counsel allegedly sent Defense counsel a follow-up letter, offering to discuss the matter and noting that "Charter Oaks was still in violation of the FHA and PWDCRA." ECF No. 6, PageID.110. Plaintiffs did not receive a response.

Several months later, on February 13, 2024, Charter Oaks served Plaintiffs with a "Notice of Lease Termination Payment Information" and a "Notice to Quit To Recover possession of Property[.]" *See* ECF No. 6-5. The notice stated that Plaintiffs were required to vacate the apartment by April 22, 2024, and failure to vacate would cause Charter Oaks to "pursue legal action to take possession of the

apartment and your rental obligation will continue at a rental rate of up to 200% of the current market plus a month-to-month premium. . ." *Id*., at PageID.135-136.

This lawsuit followed. And now, with impending expiration of the lease set to occur on April 22, 2024, Plaintiffs urge the Court to enter a preliminary injunction "enjoining Defendants Erica Roose and Charter Oaks Apartments, and all persons acting on their behalf, from evicting Plaintiffs as retaliation for their efforts to assert and enforce their rights under both state and federal law[.]" ECF No. 6, PageID.118. Additionally, they request that Charter Oaks be enjoined:

> from increasing their rent (as threatened in their February 13 letter to Plaintiffs);
>
> from denying Plaintiff Brower's reasonable request that his cat be designated an [ESA];
>
> and from otherwise interfering with Plaintiffs' ability and rights to enjoy full use of their home, pending entry by the Court of a final judgment in this action.

*Id*. The Court will discuss the law and analysis applicable to Plaintiffs' motion below.[2]

---

[2] As an initial matter, Defendants say that Erica Roose "is merely an employee and holds no ownership or operational interest in Charter Oaks. . . . Further, Roose has no authority to approve or deny any lease renewals or evictions. . . . Thus, Roose is an improperly named defendant, and any request for relief against Roose is moot." ECF No. 12, PageID.263. For these reasons, the Court declines to enjoin the conduct of Erica Roose.

III.    **Applicable Law and Analysis**

In evaluating a motion for preliminary injunction, the court considers four factors:

> (1) whether the moving party has a strong likelihood of success on the merits;
> (2) whether the moving party will suffer irreparable injury without the injunction;
> (3) whether the issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by issuance of the injunction.

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017). Because preliminary injunctions necessarily happen before the parties have had an opportunity to fully develop the record, the movant "is not required to prove his case in full at a preliminary injunction hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2007).

However, "[a] preliminary injunction is an extraordinary and drastic remedy" that "should not be granted lightly." *Munaf v. Geren*, 553 U.S. 674, 689–90, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) (internal quotation marks omitted). Indeed, the Supreme Court has held that a preliminary injunction should "only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). And the Sixth

Circuit has cautioned "that [the preliminary injunction factors are] to be balanced, not prerequisites to be met." *Certified Restoration*, 511 F.3d at 542. It is well established, however, that "'a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]'" *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir.2010) (quoting *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997)). Thus, "a finding that there is simply no likelihood of success on the merits is usually fatal" to a motion for preliminary injunction. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir.2000).

Plaintiffs move for injunctive relief based on their failure accommodate claims and their retaliation claims. Below, the Court will discuss the preliminary injunction factors with respect to each set of claims.

### 1. Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits

#### A. Failure to Accommodate Claims

Under the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person . . ." 42 U.S.C. § 3604(f)(2)(A). Discrimination prohibited by the FHA includes the refusal to make "reasonable accommodations" in "rules, policies, practices, or services, when such accommodations may be necessary to afford [the disabled

person] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Sixth Circuit has determined that the "operative elements of a failure-to-accommodate claim are 'reasonable', 'necessary', and 'equal opportunity.'" *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir.2002).

Thus, to establish a failure-to-accommodate claim, the plaintiff must prove that:

> (1) [ ]he suffers from a disability within the meaning of [the] FHA; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford 'an equal opportunity to use and enjoy the dwelling[;]' (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation.

*Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir.2001); *see also Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir.2014).

It is well established in the Sixth Circuit that "[a]ccommodations required under the Act must be both reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling." *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039 (6th Cir.2001); *see also Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795–96 (6th Cir.1996). The "necessity element" mandates "'a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled

person would receive.'" *Madej v. Maiden*, 951 F.3d 364, 371 (6th Cir. 2020) (quoting *Hollis*, 760 F.3d at 541. In other words, "'necessity functions as a but-for causation requirement, tying the needed accommodation to equal housing opportunity.'" *Id*., at 371 (quoting *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 110 (3d Cir. 2018)). Michigan courts have similarly construed a landlord's duty to accommodate a disabled tenant under the PWDCRA. *See, e.g., Bachman v. Swan Harbour Ass'n*, 252 Mich.App. 400, 653 N.W.2d 415, 414–15 (Mich.Ct.App.2002).

Plaintiffs' brief focuses almost exclusively on Plaintiffs' disability status and the reasonableness requirement. They fail to demonstrate a strong likelihood of success on the merits because their brief does not allege that Brower's requested ESA was necessary to afford him equal opportunity to use and enjoy the apartment.

Regarding the first alleged refusal to accommodate Brower's request for an ESA, Plaintiffs say that one of Charter Oaks' employee told him that he could use one of Godfrey's two emotional support animals, rather than obtaining a dog as the third ESA that would live in the apartment. The record does not suggest that it was necessary for Brower to obtain an ESA, rather than relying on one of Godfrey's two ESAs. After all, Plaintiffs' brief notes that "[d]uring the time in which he searched for a new ESA, Plaintiff Brower and Jaspurr [the Cat] developed a bond, and Plaintiff Brower discovered that Jaspurr served the function of an ESA

satisfactorily." ECF No. 6, PageID.109. These facts demonstrate that Brower, requesting for Charter Oaks to permit the addition of a fourth animal (and the third ESA) in the apartment, did not make a request for a necessary accommodation.

Considering the second alleged refusal to accommodate, Plaintiffs show no likelihood of success because they do not allege that Charter Oaks received his request and Defendants say "there is no record" of it. ECF No. 12, PageID.266.

The final accommodation that Brower ultimately sought involved simply changing Jasper's designation as a "pet[,]" which required payment of the appropriate fees under the Lease Agreement, to an ESA that would not require the payment of certain fees. Jasper was already living in Plaintiffs' apartment, and Plaintiffs do not explain how adjusting Jasper's designation under the lease was a necessary accommodation that would have mitigated Brower's symptoms.

As Defendants point out, Brower submitted a letter to Charter Oaks from his physician. The letter noted Brower's "history of anxiety" and stated that "the presence of an emotional support animal will mitigate his symptoms." ECF No. 12-14, PageID.351. Compare Godfrey's request for an ESA, which Charter Oaks approved. Her physician letter stated that,

> due to [Godfrey] having this disability, they have specific limitations in regards to performing what would usually be considered normal, but significant, day to day activities. To help aid in mitigating these

challenges and improving day to day functionality, I have prescribed
[Godfrey] the ability to use her pet as an emotional support animal. The
presence and companionship of this animal is considered to be
necessary for [Godfrey] because it will help mitigate the symptoms that
they are currently experiencing.

ECF No. 12-6, PageID.315. Brower's physician letter is deficient because it says

nothing about the extent of his anxiety, and it does not provide any basis on which

the Court may infer that Brower's anxiety causes him to experience any significant

functional limitations, and it does not imply that converting Jasper the cat's

designation under the lease to an ESA was necessary to alleviate his anxiety.

In these ways, Plaintiffs fail to demonstrate that their failure to accommodate

claims are likely to succeed on the merits. Because Plaintiffs are not likely to succeed

on their failure to accommodate claims, those claims cannot form the basis of

injunctive relief, regardless of whether the other factors weigh in their favor. The

Court proceeds to Plaintiffs' retaliation claims next.

### B. Retaliation Claims

In their motion, Plaintiffs contend that their lease has "been continuously and

routinely renewed every year since Plaintiff Godfrey moved in seven years ago."

ECF No. 6, PageID.121. "There is no legitimate reason for Defendants to refuse to

renew the lease, and none was given[,]" Plaintiffs say, "this termination is clearly

intended as retaliation for Plaintiff Brower asserting his rights under the FHAA [(42

U.S.C. § 3604)] and [the] PWDCRA." *Id.*

Pursuant to 42 U.S.C. § 3617, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" § 3604.

A prima facie case of retaliation under the FHA requires essentially similar proof as a PWDCRA retaliation claim brought pursuant to MCL § 37.1602(a): "(1) . . . the plaintiff exercised or enjoyed a right guaranteed by the FHA; (2) . . . the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection existed between the plaintiff's exercise or enjoyment of a right and the defendant's conduct." *Simmons v. CPI Apartment Fund 2012, LLC*, No. CIV. 14-11855, 2015 WL 2453516, at *11 (E.D. Mich. May 22, 2015) (citing *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th Cir.2004)). *See Bachman v. Swan Harbour Ass'n*, 252 Mich. App. 400, 417, 653 N.W.2d 415, 428 (2002) (interpreting PWDCRA parallel provision consistently with FHA). To constitute retaliation, "the defendant must have had actual knowledge of the plaintiff's protected activity when the defendant engaged in the coercion, intimidation, threat, or interference." *Id*. (citing *Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir.1996)). The Court will assess each element in turn.

### (1) Protected Activity

Regarding Plaintiffs' purported exercise of protected activity, Defendants assert that "[t]o the extent they are claiming their protected activity was Brower's

request for an ESA, this request is not protected under the FHA or PWDCRA[.]"
ECF No. 12, PageID.276. "[A] request for an accommodation standing alone does
not establish that plaintiff participated in protected activity[,]" Defendant say. *Id*.
They believe "a request for an accommodation is not considered protected activity
unless the request is reasonable and necessary." *Id*. (citing *Bachman*, 653 N.W.2d at
428; and *Istre v. Hensley P'ship*, No. 3:15-CV-127-TAV-HBG, 2017 WL 744577,
at *8 (E.D. Tenn. Feb. 23, 2017)).

Under the language of MCL § 37.1602(a), a plaintiff has two means of
satisfying the first step to establish a retaliation claim: (1) by demonstrating that the
plaintiff opposed a violation, or (2) by demonstrating that the plaintiff: (a) made a
charge, (b) filed a complaint, or (c) testified or participated in an investigation or
proceeding under the PWDCRA. *Bachman*, 252 Mich App at 435. "[I]f a person
satisfies the requirements under either of these two prongs of MCL 37.1602(a), then
the person is said to be engaging in a 'protected activity.'" *Id*.

In *Bachman*, a disabled tenant brought an action under the PWDCRA and
FHA against the defendants. He alleged that defendants failed to accommodate his
disability and retaliated against him for seeking accommodations. *Id*., at 407-408.
Defendants denied the plaintiff's request for blue paint, snow removal, and a patio
ramp. *Id*., 438. The case proceeded to trial, where the plaintiff prevailed. *Id*. The
Michigan Court of Appeals reversed in part the trial court's denial of the defendants'

motion for directed verdict. The court found, *inter alia*, that defendants did not unlawfully discriminate against plaintiff by denying the request for blue paint and a patio ramp. *Id*., at 428, 431. The evidence established that the blue paint was unnecessary, and defendants had no duty under the statute to modify the premises to install the paint and patio ramp. *Id*. Consequently, the court held that the defendants were entitled to a directed verdict on the retaliation claim because the plaintiff's requests "did not constitute an opposition to a violation of the PWDCRA [and FHA], but were instead merely requests for accommodation." *Id*., at 436, n.27. Thus, the "evidence [did] not establish that plaintiff was participating in protected activity." *Id*., at 438.

*Bachman* establishes that a tenant does not "oppose a violation" of the PWDCRA, and therefore does not engage in protected activity for purposes of MCL § 37.1602(a), when he/she submits a request for an accommodation that is either unreasonable or unnecessary for the tenant's enjoyment of the property. As stated *supra*, Brower makes no showing that his accommodation was necessary. Thus, he does not show that he was engaged in protected activity under the PWDCRA.

Reaching the same conclusion under the FHA, however, is more problematic. Though the parties do not address it in their briefing, careful attention to Plaintiffs' claims requires the Court to acknowledge the Sixth Circuit's holding that "[§] 3617 requires a nexus with the rights protected by [§3604], *without requiring an actual*

*violation* of the underlying provision []." *Linkletter v. W. & S. Fin. Grp., Inc*., 851 F.3d 632, 639 (6th Cir. 2017) (emphasis added) (citing *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528 (6th Cir. 2013). *Linkletter* demonstrates that "the language of § 3617 should be broadly interpreted and applied with the Fair Housing Act's purpose" of "assistance and advocacy of FHA rights" "in mind." *Id*. at 637, 639 (citations omitted); *see Id*., at 638 ("the language 'interfere with' should be broadly interpreted to reach all practices which have the effect of interfering with housing rights."). *see also Thompson v. N. Am. Stainless*, *LP*, 562 U.S. 170, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011) ("The language of the Act is broad and inclusive.").

In *Linkletter*, the plaintiff signed a petition in support of a women's shelter that was engaged in a land dispute with her employer, and the plaintiff's employer consequently terminated her employment contract. *Linkletter*, 851 F.3d at 638-40. The Sixth Circuit determined that the plaintiff had "aided or encouraged" the FHA rights of the shelter's residents under § 3604(a). *Id*. Thus, she engaged in protected activity sufficient for her to pursue a § 3617 claim against her employer. *Id*.

Likewise, in *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528–29 (6th Cir. 2013), the Sixth Circuit squarely rejected the argument on which Charter Oaks relies. In that case, the defendants argued "that they may not be charged with violating § 3617 unless they separately violated at least one of the

provisions in §§ 3603–3606." *Id*. "We disagree[,]" the Sixth Circuit stated, "Section 3617 nowhere says that it comes into play only when a violation of one of these other sections has also occurred." *Id*. The court provided an "example" that "confirmed the freestanding nature of some § 3617 claims." *Id*. (emphasis added). As the example illustrated,

> Suppose Alice says to Bob, a prospective home buyer, 'If a seller ever discriminates against you because of your race, sue him!'Eve, a racist eavesdropper, becomes enraged upon hearing this conversation and threatens to assault Alice. At this point, Eve has violated § 3617, regardless of whether she discriminated against Bob or otherwise violated the fair housing rights secured by §§ 3603–3606. Eve has 'threaten[ed] ... [a] person,' namely Alice. And this threat was 'on account of [Alice's] having aided or encouraged any other person in the exercise or enjoyment of [a fair housing right].' Eve threatened Alice because Alice had encouraged Bob to protect himself against discrimination relating to housing. The statute requires no more.

*Id*.

It is true that the circumstances of Plaintiffs' retaliation claim are distinguishable from *Linkletter* and *Hidden Village* because, unlike Brower, those cases involved retaliation by defendants against plaintiffs who advocated for the FHA rights of third parties. *Linkletter* and *Hidden Village* remain persuasive, however, because the broad scope of § 3617 do not suggest that a plaintiff must establish a violation of § 3604 to prevail on a retaliation claim under the FHA. In further support of this conclusion, the Court notes that the Seventh Circuit has held that "where the conduct that allegedly violated section 3617 is the same conduct that

allegedly violated section 3604(a)[,] and was engaged in by the same party, the validity of the section 3617 claim depends upon whether the [conduct] violated section 3604(a)." *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1288 n. 5 (7th Cir.1977); *see also South–Suburban Housing Ctr. v. Greater South Suburban Bd. of Realtors*, 935 F.2d 868, 886 (7th Cir.1991). Brower points to separate alleged violations of the FHA based on separate conduct, § 3604(a) (refusal to accommodate), and § 3617 (nonrenewal of the lease).

Brower submitted a request for accommodation and complained of Defendants' alleged violation in written letters. This is protected activity. *See Kris v. Dusseault Fam. Revocable Tr.*, 594 F. Supp. 3d 333, 341 (D.N.H. 2022) ("Protected activity [under the FHA] can include requesting a reasonable accommodation, protesting discriminatory housing practices, or opposing practices the plaintiff reasonably and in good faith believed amounted to discriminatory housing practices."). Accordingly, the Court finds that Brower engaged in protected activity.

The Court next turns to discuss the adverse action prong.

### (2) Adverse Action and (3) Causal Connection

As a reminder, Plaintiffs allege that Defendants, declining to renew their lease, retaliated against them for attempting to enforce their rights under the FHA and PWDCRA. Defendants say the "[c]ase law is clear that landlords have no obligation to renew a tenant's lease or allow a tenant to stay on the property for additional time beyond the lease term." ECF No. 12, PageID.277. They believe that "'retaliatory eviction' does not extend to expiration of fixed-term leases." *Id.*, (citing *Frenchtown Villa v. Meadors*, 117 Mich. App. 683, 689, 324 N.W.2d 133, 135 (1982)).

Defendants also cite MCL § 600.5720(1)(a). Under that statute,

> [a] judgment for possession of the premises for an alleged termination of tenancy shall not be entered against a defendant if 1 or more of the following is established. . . [t]hat the alleged termination was intended primarily as a penalty for the defendant's attempt to secure or enforce rights under the lease or agreement or under the laws of the state, of a governmental subdivision of this state, or of the United States.

Here, the statute refers the defenses available to a tenant's who challenges the propriety of an eviction filed by a landlord pursuant to Michigan's summary proceedings statute, MCL § 600.5701 *et seq.* For this reason, the statute refers to landlords as the plaintiffs and the tenants as the defendants. In *Frenchtown*, the Michigan Court of Appeals analyzed this statute and determined that the retaliatory eviction defense was not available because "a landlord seeking repossession of premises upon the expiration of the term of a fixed lease does not terminate the

tenancy, but merely seeks repossession pursuant to the termination that has otherwise taken place." *Id*., at 689. *Frenchtown* is unpersuasive because the issue before Court does not involve a claim for breach of the lease agreement, it does not involve summary proceedings under Michigan law, and Plaintiffs do not assert a "retaliatory eviction" defense under § 600.5701.

The relevant issue is whether Defendants' nonrenewal of the lease agreement constitutes "adverse action" for purposes of a retaliation claim under the FHA and the PWDCRA. An adverse action under § 3617 is conduct that "a reasonable person would view as coercive, intimidating, threatening, or interfering with the exercise of her protected rights under the FHA." *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018) (internal quotations omitted).

The Court notes that Plaintiffs cite no authority for their contention that nonrenewal of a lease constitutes an adverse action under the FHA. Even assuming *arguendo*, however, that non-renewal of the lease constitutes an adverse action, Plaintiffs fail to allege a causal connection between their request for accommodation and Defendant's nonrenewal of the lease. Without sufficient elaboration, Plaintiffs conclude that,

> it is patently obvious under the totality of the circumstances that Defendants are refusing to renew Plaintiffs' lease because of their "two animals per unit" with no exceptions policy, which violates the rights

of both Plaintiffs, and because Plaintiffs sought legal counsel who indicated that they would file suit if their rights continued to be ignored.

ECF No. 14, PageID.432. Causation is required to prove retaliation claims under both the FHA and the PWDCRA. The only facts Plaintiffs point to in support of causation here are the occurrence of the nonrenewal four months after Brower's request for accommodation was denied, and the fact that they had lived in the apartment for several years.

Plaintiffs are "not required to prove his case in full at a preliminary injunction hearing." *Certified Restoration*, 511 F.3d at 542. Without more facts or argument, however, Plaintiffs do not demonstrate a strong likelihood of success on the merits of their retaliation claim. *Compare e.g., Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 437 (E.D. Va. 2011), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012). In *Matarese*, the apartment owners violated the FHA by not renewing the lease of a tenant whom they believed to be disabled by sensitivities to paint, smoke, and mold. *Id*. The apartment owners also refused to rent to the resident at their other apartment locations. *Id*. The apartment manager told the resident that they were tired of accommodating her chemical sensitivities, and the owners gave inconsistent reasons for nonrenewal of lease, which demonstrated falsity of their nondiscriminatory reason. *Id*.

Here, Defendants allege facts that suggest the existence of a nondiscriminatory reasons for the nonrenewal. They approved two of Plaintiffs' requests for accommodation in previous years.  And, although Charter Oaks imposed a two-pet limit policy, Plaintiffs were allegedly permitted to have more than two animals in the apartment. Indeed, Defendants say "the [policy] change became effective after Plaintiffs signed their lease, [so] Edward Rose permitted Plaintiffs to reside in the unit with their animals for the existing lease term." ECF No. 12, PageID.265. Further weakening any purported existence of causation, Defendants assert that "Edward Rose routinely issues non-renewals, . . . receives voluminous ESA requests (including from Plaintiffs)[,] and they continue to renew leases with tenants who have ESAs." ECF No. 12, PageID.280. They also allege that "fourteen other residents at Charter Oaks were not renewed." *Id*. Additionally, Defendants gave Plaintiffs notice of the nonrenewal within the time required by the Lease Agreement.

Plaintiffs filed a reply brief but do not address the critical problems Defendants raise with the casual connection. The Court is not persuaded Plaintiffs are entitled to injunctive relief.

The Court will not discuss the remaining preliminary injunction factors because, even if the Court were inclined to find that they weigh in Plaintiffs' favor, the Court may not award injunctive relief where, as here, Plaintiffs fail to

demonstrate a likelihood of success on the merits. *See Winnett*, 609 F.3d at 408 ("a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]") (internal quotation omitted).

## IV.    Conclusion

Plaintiffs' motion for preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**


 /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  April 19, 2024


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 19, 2024, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager